Ms. Armenta's conviction as to the financial gain count should be overturned because the district court's instruction as to the financial gain element of the offense was constitutionally defective as it relieved the government of the financial gain element of the offense. of proving that Ms. Armenta committed the offense with the specific intent of financial gain as directed by this court in Munoz. The instruction given by the district court was simply that the government need only prove that the offense was done for the purpose of financial gain. The problem with this instruction is that, as in Munoz, it implies that proof of any person's financial gain in connection with the alien's transport will satisfy the financial gain element of the offense. The instruction given by the district court in this case doesn't specify by whom the offense must be done or clarify who needs to receive the financial gain or who should intend to receive the financial gain. Once the trier of fact assumed on a tainted instruction that the principal offense had been committed for financial gain, this isn't a situation where you get two, with the aiding and abetting, two inconsistent offenses. Wouldn't that necessarily subsume the aiding and abetting because the aiding and abetting doesn't require, of course, that the financial gain go to the aid or abetter, but rather that the aid or abetter aid and abet somebody else knowingly getting someone across the border and it turns out that other person is going to make financial gain. So does it become really sort of a harmless error? No, because in this case, Ms. Armenta Fiscal was charged as both a principal and an aid or abetter. And there's no way to tell which theory... But what I'm getting to is by finding her guilty on the principal offense, doesn't it necessarily subsume... There's a finding by the jury that someone was getting financial gain, or by the trier of facts. There's a finding that she knew about what was going on, that she aided and abetted, and that someone was getting financial gain. So that makes out the aiding and abetting. Isn't it necessarily subsumed when they find the principal offense to be true? In the principal offense, if Ms. Armenta was charged and convicted solely as a principal, the government would have needed to show that she intended to financially gain. But you don't need to show that for aiding and abetting. Arguably, you need to show that she intended for the principal to gain financially. Well, that's the question. Does she need to intend to aid and abet, and it turns out that a principal, or is it required to aid and abet that she know that someone else is getting financial gain? In order to aid and abet and be convicted of a financial gain offense, she would need to know that someone else is going to financially gain because an aider and abetter, in order to be convicted of aiding and abetting, there is the additional element that the individual specifically intend, all of the elements of the underlying offense, and in this case, the financial gain count. So the government would have needed to either prove as a principal that she intended to financially gain or for a conviction as an aider and abetter that she intend for the principal to financially gain, neither of which they did here. And this defective instruction then at least is defective to the principal. And since we have no idea whether the jury convicted her as the principal or the aider and abetter, under the Supreme Court's decision in Yates, that because the verdict is not supportable on one ground, and it's impossible to tell which one the jury picked, the convicted on, reversal is required. Here the evidence in the record easily shows that Ms. Armenta was convicted as a principal by the jury. She was the driver and sole occupant of the car. It was a compartment case. And the government, in fact, argued in their closing that on page 269 of the ER, that she was there when the alien was loaded in the compartment. So clearly the argument was presented to the jury that Ms. Armenta was actually a principal. And the evidence is, in fact, strong that that could have been a theory on which the jury convicted her, that she not only intended to financially gain, that she intended to financially gain for herself, that she was supposed to be the principal, which is the real problem with this instruction, because it eliminated the intent for her to financially gain. In fact, the government argued in its closing that so long as someone was going to get paid for this woman, the element had been met. And that was at page 264, or 274, excuse me. That clearly shows the effect of this error on the trial itself and on Ms. Armenta's conviction. This court has often held that there is a distinction between the aiding and abetting cases and the principal cases. In Sy, and Glynn, and Odalong-Garcia, the court did point out that that specific intent of financial gain isn't required. But those cases are very distinguishable from this case, from the case of Barr, because the government in that case charged only the aiding and abetting theory of liability, which means proof of another's financial gain was sufficient. When the government here decided to charge both, the waters became too muddied, and as it's impossible to tell which theory the jury convicted on. Because that's the problem. It seems like those cases could be read to simply say that for the aiding and abetting, the person need only aid and abet in the underlying act, and that it turns out that someone is going to gain, and that the principal or the person aiding and abetting is going to make a financial gain. And once you've done that, it's aiding and abetting without the specific intent that the principal get the financial gain. If I understand your issue with these, it's that because in this case, Ms. Armenta was charged as an aider and abetter, and if the government made out that somebody was going to financially gain, then obviously she must have been convicted as an aider and abetter? Is that kind of the question? Well, no, that the two prongs that you're talking about, that it wouldn't be inconsistent results. If what you need for aiding and abetting is that the person did aid and abet in the underlying crime of bringing the person across, et cetera, et cetera, and so long as somebody is going to make some money off this, they can't be charged as a principal if they didn't know, if they're not gaining financial. But as long as they know they're aiding and abetting in that, and it turns out that one of the people aiding and abetting or the principal is involved are indeed getting financial gain, then you've aided and abetted in the crime. I gather you're saying no, that the person must know that the principals are making money. Yes. Which seems a little odd because usually that person is going to take a cut as a practical matter. Maybe as a practical matter that is the case, but it's a logical reading of Munos. Munos tells us that specific intent to financially gain by the principal is required for conviction of the financial gain offense. To then say so long as the government charges you as an aid or an abetter, so long as they can prove that somebody somewhere was going to financially gain, it doesn't matter whether you as an aid or an abetter actually know about any financial transactions, really undercuts the decision. No, no, you won't go down for the principal offense. You may just go down as an aid or an abetter. And to some extent, isn't it, from a policy standpoint, it makes sense if you're going to aid and abet, you run the risk that somebody may be making money. Even if you don't know, you may go down as an aid or an abetter. But it does undercut this. And you certainly committed the underlying offense of transport, obviously. Potentially, but it does undercut the element in aiding and abetting that in order to aid and abet, you must have the intent to aid and abet all of the elements of the offense. And so to say you only have to have the intent to aid and abet all of the elements of the offense, except for financial gain, it undercuts the theory of aiding and abetting, the specific intent required to aid and abet, by allowing someone to say, I intended to help this person, but because they know nothing about the financial arrangements, they're still on the hook for that, doesn't line up with the aiding and abetting jurisprudence and the requirement that somebody specifically intend all of the elements of the underlying offense in order to be convicted of aiding and abetting. Do you want to reserve some time? Yes. Thank you. At some point before you sit down, you want to come straight to the point of where we see in this record her financial gain. Sure. And I'll begin with that. You can do it anyway. Okay. Just for the record, good morning, Your Honors. My name is Jason Forge, and I'm here on behalf of the United States. I'll start off with the question Judge Ferris just asked. Good place to begin. I'm sorry? Good place to begin. I thought so. What we have in this record is very strong circumstantial evidence that Ms. Armenta was going to gain from this offense and that she knew others were going to gain from this offense. And let me outline that circumstantial evidence for you. First of all, she is the lone individual who committed the physical act necessary for this crime. She brought the illegal alien into the United States hidden beneath the backseat of her car. We have testimony that the illegal alien had never seen or met Ms. Armenta before, so we foreclosed the possible Good Samaritan motivation for this crime. And we have testimony that the illegal alien was paying $500 for this to occur. Now, looking at all the evidence in the light most favorable to the government, we have an individual who's taking all of the risk for this offense, and the alien who's paying $500 for this offense to be committed, and no familial or other relationship between the two that would suggest a non-financial motive for doing it. And looking at all that evidence in the light most favorable to the government, clearly an inference could be drawn that Ms. Armenta intended to share in whatever money was being paid for this alien to be brought into the United States. Well, Mendoza wasn't family, but there was testimony he was a friend. In this case, but not the illegal alien, though. There was testimony about the individual who arranged it. But she was doing a favor for a friend. I'm not saying it's conclusive, and I'm not saying it wouldn't have been possible for someone to disagree with that inference. But in this context, and frankly, if we're talking about the sufficiency of the evidence, I have to correct our brief, and actually the brief of Ms. Armenta, because both sides overlooked the fact that the Rule 29 motion that Ms. Armenta brought, she brought it at the close of the government's case. Then she put on evidence, and she did not renew that motion at the close of her evidence. What happened is the evidence, she rested, the government had already rested, the case went to the jury, the jury came back with its guilty verdicts, and then she brought up the Rule 29 motion again. That's too late. Under U.S. v. Tizer and under U.S. v. Larson, that is too late to renew. Aren't you too late to raise the argument? Haven't you forfeited your argument by not raising it in your brief? Those facts are in the record. Your Honors are obviously free to look at those facts. But you haven't argued it. I'm sorry? But you never argued it. I haven't submitted the case yet, Your Honors. Every record has a lot of additional facts, but if you don't raise them, you're wrong. Except you didn't raise it in your brief. I acknowledge that, and I apologize for that. But I don't want to go too far with that argument anyhow, particularly if you're not going to let me make it. But the point is, the more important point is the first point that I made, which is that there was sufficient evidence in the record from which the jury could have drawn the conclusion both that Ms. Armenta intended to gain financially from this and that she intended to aid and abet others who were going to financially gain from this. And I think since that is the most central issue of this appeal, it's critical to take a look at what I would refer to as the procedural history of this instruction. And in order to do that, we have to look at the instruction that Ms. Armenta herself submitted. This is her proposed instruction. It's at page 15 of the excerpt of record. And regarding the financial gain element, this is the element that Ms. Armenta submitted. This is what she's proposed. Sixth, Ms. Armenta committed the offense for the purpose of financial gain. Later, and I'm referring now to a portion of the transcript from the first trial, at page 50 of the record, Ms. Armenta explicitly stated that she had no objections to the jury instructions other than an issue of semantics regarding one of the instructions concerning her statement. That's at pages 50 and 51. No objections to the instructions. In the trial that is the subject of this appeal, at pages 186 and 187, again the court asks Ms. Armenta's counsel, and that's excerpt of record pages, whether there are any problems with the jury instructions. The court states that, okay, we will plan on using the same instructions. The only difference may be whether or not you call Ms. Armenta and whether or not you would call any character witness. But with the exception of those two instructions, I think all other instructions would be applicable. Would you agree? Ms. Armenta's counsel, I believe they are, Your Honor. They were satisfactory last time. You know, Mr. Forgey, when she comes back to rebut, I think what you want to convince us, I gather what you want to convince us is that the facts and reasonable inferences to be determined from those facts, the province of the trial fact, if that is so and she's convicted, the inference was drawn and it's reasonable. Now, did you find a case that said that? I'm not sure I understand your question, Judge Ferris. Well, you recognize that there's nothing direct. You said it. It's circumstantial. Correct. Circumstantial means you, I mean, it's evidence, but you draw inferences from these circumstances that thus is so. Correct. And a jury, you think, did that. Well, I don't think there's any question that the jury did that here, because the jury did return a finding of guilt. Is it a question for the court of appeals whether the jury did it or does the court of appeals look and see they found guilt, this is the only thing they could have done? Well, I don't think. Or it holds. I don't think in this context it has to be a finding that that's the only thing they could have done. I think the question is whether they could have reasonably done so under the facts and the evidence that were presented at trial. And I think they clearly could have here. You'll find there's a case that said, well, I ask you if a case says D, but you'll be surprised when you see it, I think. In the Sy case and the Munoz case, in the Sy case, there was no direct evidence that the defendant in the Sy case knew exactly what the aliens were paying. There was a lot of circumstantial evidence. And this court affirmed the conviction in Sy. So if you want an example of a case in which that occurred, the Sy case. The Munoz case. I want it primarily for her to rebut when she comes back so we can know if we decided the case correctly. And I don't see anything in the Sy opinion that states that he was tried only as an aider and abetter. The Sy case, I think, is frankly indistinguishable from this case. We have an individual who was tried for bringing an alien. In the Sy case, he did bring the aliens. There was circumstantial evidence that he was doing so for financial gain. And this court affirmed his conviction. But the most important point to make regarding the instruction here, Your Honors, is that it's not erroneous under Munoz. I've explained to you what Ms. Armenta asked for. And let's see what she received, what she didn't object to. At page 333 of the excerpts, we see the element concerning financial gain. Fourth, defendant brought the person to the United States for the purpose of commercial advantage or private gain. That's exactly what she asked for. That's exactly what Munoz requires. This is at page 333 of the excerpts. And the error in Munoz did not happen here. The error in Munoz at 1046 of that opinion, and I'm quoting from this court's decision, in instructing the jury on the financial gain element of the offenses, the district court stated that, quote, it is not necessary for the government to prove the defendant was to receive the financial gain. There was no instruction like that in this case. That's why Ms. Armenta didn't object. And that's why she shouldn't be objecting today. Because even in her brief, at page 10 of her brief, she states the offense charged in count one, bringing an alien to the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. section 1324 A2B2I, requires that the government prove beyond a reasonable doubt that the defendant acted for the purpose of commercial advantage and private financial gain. Again, the element of the jury was given. Fourth, you must find beyond a reasonable doubt, the defendant brought the person to the United States for the purpose of commercial advantage or private gain. I understand your argument. I'm really interested. Let's assume for the moment that the instruction was tainted, it was improper.  Do you, what's your position vis-a-vis the aiding and abetting count that I was discussing with counsel? Does that fall, does it fall because we can't tell which one, the jury, if this instruction is wrong? The aiding and abetting count would probably fall too, would it not? Well, the aiding and abetting count itself wouldn't fall, but I do agree with counsel that if there is a defective instruction, and you can't determine which, whether the jury relied on the defective one or the non-defective one, or some combination of the two, I agree with counsel. And what I'm saying is you would agree also that if the instruction is tainted and was wrong on the principal count, that aiding and abetting is not subsumed and, therefore, we can't tell which. Unless you can say that it would be harmless error, which I think, Judge Cavalli, I think you were getting at that point earlier because you said that, well, hold on, aiding and abetting requires the jury to find, and counsel is correct, the jury to find that the defendant intended to aid and abet all of the elements of the offense, including someone else's financial gain. Okay. And so if the jury necessarily makes that finding, I think this Court can conclude beyond a reasonable doubt that the jury necessarily would have found that Ms. Armenta was going to get something out of this also because it would be silly to say for a complete stranger, the stranger being the alien and her friend, that she would take all of the risk for this offense and not get any gain out of it. But in no way do I concede that there was an erroneous instruction here for the financial gain. Just the contrary. I think that there's absolutely nothing wrong with this instruction under Munoz. It's exactly what Ms. Armenta asked for before Munoz. It's exactly what she argues in her appeal that she was entitled to after Munoz. And she got what she asked for. She got what she was entitled to under the law. And the jury found beyond a reasonable doubt that all of these elements were satisfied, and they did so in about 90 minutes, Your Honors. Thank you. I know I'm over my time. If you have any other questions, I'll be happy to answer them. Thank you very much. Thank you. Mr. Buttle. Move my library. First, to address Mr. Forge's argument that this is the instruction that we asked for, there's no contention that the elements themselves, as given by the district court, which were the instructions that Mr. Forge was reading, were correct. The problem was that after they gave the elements to those instructions, the district court gave an additional instruction, just like in Munoz, that said in proving the financial gain count, the government need not prove actual payment or even an agreement to pay. They must only prove that the offense was done for the purpose of financial gain. That second instruction, an instruction distinct and separate from the elements, is what caused the problem here and the confusion here and the error under Munoz. Secondly, to wrap up the argument or the question of Judge Schiavelli, is that correct? Actually, yes. Thank you. The case of Siesity states that the aider and abetter has to have at least the mens rea of the principal, if not a higher level specific intent. Therefore, if the principal must intend to gain, the aider and abetter must have at least that intent. And as far as the actual evidence presented in this trial, what you have is a woman who said to a stranger on the street, I have $500. There is no evidence that she ever saw Ms. Armenta or ever made any arrangements with Ms. Armenta that she knew who she was going to pay. And further, the evidence in the record infers that if Ms. Armenta knew about the material witness in the car at all, she found out at the port of entry when she received a phone call from the individual who made the smuggling arrangements with the alien that there was someone in the car. She drove the car in as a favor for a friend, at best found out about that alien in line. There's no evidence that she specifically intended to financially gain at all or that she knew that the principal would do so, finding out about the individual just before she entered the port of entry. With that, I'm over time if I have any. Thank you. Thank you, counsel. Case result will be submitted.
judges: Farris, Thomas, Schiavelli